1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

CHARLES LOFT,

          Plaintiff,

   v.

STATIONARY ENGINEERS, LOCAL 39
PTF, LLC,

          Defendant.

Case No.: 14-CV-00817-LHK

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION FOR
SUMMARY JUDGMENT**

Re: Dkt. No. 35

Before the Court is Defendant Stationary Engineers, Local 39, PTF, LLC's ("Defendant") motion for summary judgment. ECF No. 35 ("Mot."). Plaintiff Charles Loft ("Loft") opposes the motion. ECF No. 44 ("Opp'n"). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing for this motion scheduled for April 2, 2015, at 1:30 p.m. The April 2, 2015 case management conference remains as scheduled. Having considered the submissions of the parties and the applicable law, the Court hereby GRANTS IN PART AND DENIES IN PART Defendant's motion for summary judgment, for the reasons stated below.

**I.   BACKGROUND**

    **A.  Factual History**

1
2
3
4
5
6

Defendant is a charter union of the International Union of Operating Engineers AFL-CIO (the "International Union"), with its principal place of business in Santa Clara, California. Second Am. Compl. ("SAC"), ECF No. 25, ¶ 1. Loft is a member of Defendant, and is currently employed as an assistant chief engineer at Sequoia Hospital in Redwood City, California. *Id*. ¶ 2; Declaration of Charles Loft in Support of Response to Motion for Summary Judgment, ECF No. 44-2 ("Loft Decl."), ¶ 4.

7
8
9
10
11

On or about October 1, 2013, the collective bargaining agreement between Defendant and Dignity Hospital facilities, which included Sequoia Hospital, expired, and Defendant's members went on strike. SAC ¶ 4; Declaration of Bart Florence in Support of Defendant's Motion for Summary Judgment, ECF No. 36 ("Florence Decl."), ¶ 4. Loft, who was on leave to care for a relative at the time, manned the strike line on October 3, 2013. Loft Decl. ¶ 7.

12
13
14
15
16
17
18
19
20
21

During the strike, Bart Florence, the Director of Stationary Affairs for Defendant, received charges filed by union members alleging that Loft worked at Sequoia Hospital during the strike. Florence Decl. ¶ 4. According to a copy of the charges subsequently provided to Loft, Loft "has not manned the strike line and has helped the employer and replacement workers to keep the [hospital] plant in operating order by accepting telephone calls from the employer and walking them through the problems they encountered." Exhibit A to the Declaration of Robert Baker in Support of Response to Motion for Summary Judgment, ECF No. 44-1 ("Baker Decl."), at 2. On November 15, 2013, Defendant notified Loft of the charges and informed Loft that he had a right to "respond in writing by filing an answer, defense, or plea" no later than December 13, 2013. *Id*. at 1. On December 8, 2013, Loft responded in a letter denying the charges. Baker Decl., Ex. B.

22
23
24
25
26

On January 24, 2014, Defendant held a pre-trial hearing in San Francisco at which Defendant's board determined that there was sufficient merit to move the accusations against Loft to trial by membership. Baker Decl., Ex. E. The trial was held on February 25, 2014 in San Jose, California. *Id*.; Florence Decl. ¶ 6. According to Loft, who attended the trial, Defendant prevented Loft from presenting testimony of a witness on the grounds that the witness was not a union

27
28

United States District Court
Northern District of California

Case No.: 14-CV-00817-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

member, and further prevented Loft from introducing documents. Loft Decl. ¶¶ 18-20. Loft also alleges that a union official at the trial told Loft that "'if it was up to him,' he would take [Loft] 'out to the back alley.'" *Id*. ¶ 15. Defendant's membership found Loft guilty of "working contrary to a declared strike." *Id*. ¶ 20. As punishment, Defendant fined Loft twenty-five dollars. SAC Ex. F, at 1. According to an April 1, 2014 letter from Defendant to Loft, Loft had 30 days from the date of the letter in which to appeal the decision to Defendant's General Executive Board. *Id*.

### B. Procedural History

On February 24, 2014, the day before his union trial, Loft filed the instant action in this Court. *See* ECF No. 1. Also on February 24, 2014, Loft filed a motion for a temporary restraining order, seeking to enjoin Defendant from proceeding to trial on February 25, 2014. ECF No. 2, at 1-2. This Court denied Loft's motion for a temporary restraining order on February 24, 2014. ECF No. 12.

On June 12, 2014, Loft filed the Second Amended Complaint, which is the operative Complaint in this matter, bringing four causes of action. *See* SAC. First, Loft alleged that Defendant violated 29 U.S.C. § 411(a)(5), the Labor-Management Reporting Disclosure Act ("LMRDA"), by, *inter alia*, failing to give Loft notice of the specific charges against him, conducting a pre-trial hearing without sufficient notice, and failing to give Loft reasonable time to prepare for his defense. *Id*. ¶¶ 15-18. Second, Loft brought a cause of action under the Labor Management Relations Act ("LMRA") for breach of contract, based on the theory that Loft was a third-party beneficiary to the union constitution between Defendant and the International Union, and that Defendant's conduct breached the union constitution. *Id*. ¶¶ 24-30. Third, Loft alleged a cause of action under the LMRDA for breach of duty of fair representation. *Id*. ¶¶ 31-34. Finally, Loft alleged a claim of intentional infliction of emotional distress based on Defendant's conduct. *Id*. ¶¶ 35-40. Loft sought compensatory, special and exemplary damages, as well as attorney's fees. *Id*. at 7.

On January 14, 2015, Defendant filed the instant motion for summary judgment. *See* Mot.

Case No.: 14-CV-00817-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

Defendant also filed a statement of uncontroverted facts and conclusions of law, as well as a supporting declaration. ECF Nos. 36 & 37. On January 28, 2015, Loft filed an opposition, as well as two supporting declarations and seven exhibits. ECF Nos. 44, 44-1, 44-2 & 44-3. Loft also filed an objection to Defendant's statement of uncontroverted facts and conclusions of law.[1] ECF No. 45. On February 3, 2015, Defendant filed a reply. ECF No. 46 ("Reply").

## II.  LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (internal citations omitted).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Where the party opposing summary judgment will have the burden of proof at trial, the party moving for summary judgment need only point out "that there is an

---

[1] In Loft's objection to Defendant's statement of uncontroverted facts and conclusions of law, Loft objected that Defendant failed to comply with Civil Local Rule 56-2. ECF No. 45. That rule provides that "[u]nless required by the assigned Judge, no separate statement of undisputed facts or joint statement of undisputed facts shall be submitted" in connection with a motion for summary judgment. Civ. L. R. 56-2. The Court required no statement of undisputed facts here. Accordingly, Defendant failed to comply with the Civil Local Rules and Loft's objection is GRANTED. The Court disregards Defendant's statement of uncontroverted facts and conclusions of law.

Case No.: 14-CV-00817-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

1   absence of evidence to support the nonmoving party's case." *Id.* at 325; *accord Soremekun v.*

2   *Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the moving party meets its initial

3   burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56,

4   "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

5   **III. DISCUSSION**

6        Defendant moves for summary judgment on three grounds. First, Defendant argues that

7   Loft's failure to exhaust internal union administrative remedies "precludes his suit in civil court,"

8   and accordingly Defendant is entitled to judgment as a matter of law on all four of Loft's causes of

9   action. Mot. at 1. Second, Defendant argues that Loft's cause of action for breach of the duty of

10  fair representation is legally precluded because "the duty of fair representation relates to the

11  collective bargaining obligation of the union on behalf of members of the bargaining unit," and

12  does not apply to a union member asserting a grievance against the union. *Id.* at 12. Third,

13  Defendant argues that Loft improperly seeks punitive and emotional distress damages for Loft's

14  breach of contract claim, even though these "are not available as a remedy for breach of contract."

15  *Id.* at 11.

16       Loft, in his opposition, does not dispute that Loft failed to exhaust internal union grievance

17  procedures prior to bringing the instant litigation. However, Loft argues that his failure to exhaust

18  should be excused because, *inter alia*, Defendant's internal grievance process would not provide

19  Loft with the relief he seeks, specifically monetary damages, and is therefore inadequate. Opp'n at

20  10-12. Loft also argues that he properly asserts a cause of action for a breach of duty of fair

21  representation. *Id.* at 12-14. Loft does not address Defendant's argument that Loft cannot recover

22  punitive and emotional distress damages for the breach of contract claim.

23       The Court will address each of Defendant's arguments in turn.

24       **A.  Failure to Exhaust Internal Union Remedies**

25       Where, as here, a plaintiff brings suit pursuant to the LMRDA, "'[a]s a matter of

26  discretion, the district court may require exhaustion of intraunion remedies'" before the plaintiff

27

28

Case No.: 14-CV-00817-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    "'may pursue an action in district court.'" *Kinney v. Int'l Bhd. of Elec. Workers*, 669 F.2d 1222,

2    1226 (9th Cir. 1981) (quoting *Ornellas v. Oakley*, 618 F.2d 1351, 1354 (9th Cir. 1980)). Similarly,

3    for a cause of action under the LMRA, "[t]he determination whether to require exhaustion" of

4    internal union remedies "is left to the sound discretion of the trial court." *Scoggins v. Boeing Co.*,

5    742 F.2d 1225, 1229 (9th Cir. 1984). Here, Loft has brought causes of action pursuant to the

6    LMRDA and the LMRA. *See, e.g.*, SAC ¶¶ 14-23 (cause of action for violation of the Labor

7    Management Reporting Disclosure Act); *id.* ¶¶ 24-30 (cause of action for violation of the Labor

8    Management Relations Act). Accordingly, the Court may, at its discretion, require Loft to exhaust

9    internal union remedies before bringing the instant litigation.

10       "In exercising this discretion [regarding exhaustion of internal union remedies]," the U.S.

11   Supreme Court has articulated "at least three factors [that] should be relevant":

12       [F]irst, whether union officials are so hostile to the employee that he
         could not hope to obtain a fair hearing on his claim; second, whether
13       the internal union appeals procedures would be inadequate either to
         reactivate the employee's grievance or to award him the full relief
14       he seeks . . . ; and third, whether exhaustion of internal procedures
         would unreasonably delay the employee's opportunity to obtain a
15       judicial hearing on the merits of his claim.

16   *Clayton v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers*, 451 U.S. 679, 689

17   (1981).[2] "Where one of the three *Clayton* factors has not been satisfied, internal union remedies

18   are deemed presumptively inadequate and the district court abuses its discretion by requiring

19   exhaustion." *Casumpang v. Int'l Longshoremen's & Warehousemen's Union, Local 142*, 269 F.3d

20   1042, 1062-63 (9th Cir. 2001). "The burden is on 'the moving party . . . [to] establish the

21

22   ───────────────

23   [2] The Ninth Circuit, as well as other Circuits, applies the *Clayton* three-factor test to claims
     brought pursuant to both the LMRDA and LMRA. *See Casumpang v. Int'l Longshoremen's &
     Warehousemen's Union, Local 142*, 269 F.3d 1042, 1062-63 (9th Cir. 2001) ("Although *Clayton*
24   involved an action brought pursuant to the Labor Management Relations Act, its three-factor test
     also applies to actions brought under the LMRDA."); *Maddalone v. Local 17, United Bhd. of
25   Carpenters & Joiners of Am.*, 152 F.3d 178, 186 n.3 (2d Cir. 1998) ("Although the Court in
     *Clayton* articulated these factors in the context of [an LMRA] claim, they are generally relevant to
     whether exhaustion should be required under the LMRDA."); *Stevens v. Nw. Ind. Dist. Council,
26   United Bhd. of Carpenters*, 20 F.3d 720, 733 n.31 (7th Cir. 1994) ("[G]enerally the *Clayton*
     considerations are proper guideposts to aid the exercise of exhaustion-excusal discretion under
27   Title I of the LMRDA.")

28

Case No.: 14-CV-00817-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

1    availability of adequate internal union remedies.'" *Id.* (quoting *Scoggins*, 742 F.2d at 1230).

2         With respect to the second *Clayton* factor—"whether the internal union appeals procedures

3    would be inadequate either to reactivate the employee's grievance or to award him the full relief

4    he seeks," *Clayton*, 451 U.S. at 689—the Ninth Circuit has held that if internal union remedies are

5    not "capable of awarding [the plaintiff] 'the full relief he seeks,'" including "money damages,"

6    then the union's internal remedies are inadequate. *Casumpang*, 269 F.3d at 1062 (reversing district

7    court order requiring plaintiff to exhaust a union's internal grievance procedure because it was not

8    clear from the record whether the internal procedure could provide the plaintiff the monetary

9    damages plaintiff sought in district court); *see also Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d

10   1179, 1181 (9th Cir. 1988) (where a plaintiff brought claim in district court for monetary damages,

11   the "pivotal question [of] whether the internal union remedies were 'adequate'" was whether the

12   union "established that its internal procedures could have yielded monetary damages").

13        Furthermore, if the "plaintiff has missed an internal deadline for filing a grievance," a

14   district court may not order the plaintiff to exhaust internal appeals procedures unless the union

15   points to evidence in "the record demonstrate[ing] that the 'internal union appeals procedures' . . .

16   will permit the plaintiff 'to reactivate [his] grievance.'" *Casumpang*, 269 F.3d at 1062 (quoting

17   *Clayton*, 451 U.S. at 689); *see also Casumpang v. Int'l Longshore, & Warehouse Union, Local*

18   *142*, 297 F. Supp. 2d 1238, 1252-53 (D. Haw. 2003) (internal union remedies were adequate

19   where the union "aver[red] that Casumpang may yet appeal to membership for relief").

20        Here, Loft has brought a cause of action for, *inter alia*, compensatory damages, special

21   damages, and exemplary damages. SAC at 7. Defendant points to no evidence in the record that

22   Loft could recover such damages, or any monetary damages, by pursuing Defendant's internal

23   grievance procedure. Moreover, the provisions of Defendant's internal grievance procedure that

24   Loft attached to his opposition do not disclose what remedies would be available to Loft if he

25   prevailed. *See* Baker Decl., Ex. G. Defendant has the burden to "establish the availability of

26   adequate internal union remedies," including that Defendant's procedures are "capable of

27

28

Case No.: 14-CV-00817-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

awarding [Loft] the full relief he seeks[,] namely . . . money damages." *Casumpang*, 269 F.3d at 1062 (internal quotation marks omitted). Defendant fails to carry its burden here.

Moreover, according to Defendant's internal grievance procedure, Loft was required to file a notice of appeal "within thirty (30) days" of the date of Loft's notice of his conviction. Baker Decl., Ex. G, at 2; *see also* Reply at 2 ("Plaintiff . . . had the right to file an appeal to the International Union within 30 days."). The notice of Loft's conviction was dated April 1, 2014. SAC, Ex. F. Accordingly, the time for Loft to file an appeal has expired. Where, as here, the "plaintiff has missed an internal deadline for filing a grievance," a district court may not order the plaintiff to exhaust internal appeals procedures unless the union points to evidence in "the record demonstrate[ing] that the 'internal union appeals procedures' maintained by [the union] will permit the plaintiff 'to reactivate [his] grievance.'" *Casumpang*, 269 F.3d at 1062 (quoting *Clayton*, 451 U.S. at 689). Defendant points to no such evidence here, and the record does not disclose any. Accordingly, Defendant has not carried its burden to show that the Defendant's "internal union appeals procedures" will permit Loft to "reactivate [his grievance]." *Clayton*, 451 U.S. at 689.

For the foregoing reasons, the Court finds that Defendant has not carried its burden to "establish the availability of adequate internal union remedies." *Scoggins*, 742 F.2d at 1230. Accordingly, the Court DENIES Defendant's motion for summary judgment on the grounds of Loft's failure to exhaust internal grievance procedures.

### B.  Breach of Fair Duty of Representation

Defendant moves for summary judgment as to Loft's claim for breach of fair duty of representation, on the grounds that such a claim is legally precluded. Mot. at 12. Defendant argues that "the duty of fair representation relates to the collective bargaining obligation of the union on behalf of members of the bargaining unit with the employer of those members." *Id*. Defendant then argues that because the instant case "does not relate to any conduct of the Union with Plaintiff's employer," it cannot involve a claim for the breach of fair duty of representation. *Id*.

United States District Court
Northern District of California

1  Therefore, "for that reason . . . the Third Cause of Action [for breach of fair duty of representation]

2  must fail." *Id*. at 12-13.

3      "It is well settled" that a union member may bring "an action for breach of the duty of fair

4  representation . . . against a union as an entity." *Carter v. Smith Food King*, 765 F.2d 916, 920-21

5  (9th Cir. 1985); *see also Moore v. Int'l Bhd. of Elec. Worker, Local 6*, 78 F. App'x 8, 10 (9th Cir.

6  2003) ("The district court did not err in concluding that [LMRA] provides the basis for an action

7  for breach of contract or breach of the duty of fair representation . . . against a union as an

8  entity."). This is because the duty of fair representation is "an essential means of enforcing fully

9  the important principle that 'no individual union member may suffer invidious, hostile treatment at

10  the hands of the majority of his coworkers.'" *Breininger v. Sheet Metal Workers Int'l Ass'n Local

11  Union No. 6*, 493 U.S. 67, 79-80 (1989) (quoting *Motor Coach Emps. v. Lockridge*, 403 U.S. 274,

12  301 (1971)). Therefore, Loft may bring a cause of action against Defendant for breach of the fair

13  duty of representation. Moreover, Defendant cites no authority to the contrary.

14      Accordingly, the Court DENIES Defendant's motion for summary judgment as to Loft's

15  claim for breach of the duty of fair representation.

16  **C. Punitive and Emotional Distress Damages for Breach of Contract**

17      Finally, Defendant argues that Loft's requested remedies for the breach of contract cause

18  of action are legally precluded. Mot. at 11. In the operative Complaint, Loft alleges that the

19  International Union's constitution is a contract between Defendant and the International Union, of

20  which Defendant is an affiliate, and that Loft is a third-party beneficiary of this contract. SAC ¶¶

21  25-27. Loft further alleges that Defendant breached the International Union's constitution. *Id*. ¶

22  28. Loft therefore brings a cause of action for breach of contract under the LMRA, and seeks

23  "punitive damages" as well as damages for "emotional distress." *Id*. ¶¶ 29-30. Defendant, in its

24  motion, argues that punitive damages and emotional distress damages are "not available as a

25  remedy for breach of contract." Mot. at 11. Loft, in his opposition, does not address Defendant's

26  argument regarding what damages Loft may recover for breach of contract pursuant to the LMRA.

27

28

Case No.: 14-CV-00817-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

As a preliminary matter, the Court notes that Federal Rule of Civil Procedure 56(a) permits a party to move for summary judgment as to a "claim or defense." Fed. R. Civ. P. 56(a). However, here Defendant appears to be challenging Loft's right to a *remedy*. *See* Mot. at 11 (arguing that punitive and emotional distress damages "are not available as a remedy for breach of contract"). Although it does not appear the Ninth Circuit has explicitly addressed the question of whether a party may move for summary judgment on the availability of a remedy, most district courts to consider the question have held that it is proper.[3] *See, e.g.*, *Stellar J Corp. v. Smith & Loveless, Inc.*, No. 09-CV-353-JE, 2010 WL 4791740, at *2 (D. Or. Nov. 18, 2010) ("Even if there were a clear distinction between a theory of liability and the relief to which it may entitle a party, Rule 56 provides a basis for the Court to resolve something less than the whole of a claim on summary judgment when a party fails to produce evidence to support a portion of its claim."); *Hamblin v. British Airways PLC*, 717 F. Supp. 2d 303, 307 (E.D.N.Y. 2010) ("[T]he right and the remedy are each part of the 'claim' as defined in Rule 56."); *SEC v. Fisher*, No. 07 C 4483, 2012 WL 3757375, at *9 (N.D. Ill. Aug. 28, 2012) ("Courts have held that a particular remedy is a part of a claim on which summary judgment may be granted."); *see also Matson Plastering Co. v. Plasterers & Shophands Local No. 66*, 658 F. Supp. 1580, 1580-81 (N.D. Cal. 1987) (granting summary judgment to union defendant on question of whether plaintiff union member was entitled to punitive damages, on the grounds that such damages were legally foreclosed), *aff'd Matson Plastering Co. v. Plasterers & Shophands Local No. 66, Operative Plasterers & Cement Masons Int'l Ass'n of the U.S. & Can.*, 852 F.2d 1200 (9th Cir. 1988). Therefore, the Court finds that it can

---

[3] The only case identified by the Court in which a district court held a defendant could not challenge a plaintiff's right to recover certain remedies in a motion for summary judgment is *In re Methyl Tertiary Butyl Ether Products Liability Litigation*. 517 F. Supp. 2d 662, 666 (S.D.N.Y. 2007) ("Rule 56, together with Rule 54, allows a court to enter partial summary judgment, but these rules focus on *claims,* not the relief sought. Thus, the very concept of defendants' proposal—partial summary judgment as to a particular *remedy*—is outside the contemplation of the Federal Rules." (emphases in original)). However, the *In re Methyl* court then treated defendant's motion for summary judgment regarding remedies as a motion *in limine*, and ruled on it as such. *See id.* at 667 ("[D]efendants' motion will be considered as a motion *in limine* to exclude from trial all arguments and evidence that are relevant solely to punitive damages.").

10

1    address Defendant's motion for summary judgment challenging whether Loft is permitted to

2    recover punitive and emotional distress damages for Loft's breach of contract claim.

3         The Court first addresses whether Loft may recover punitive damages for Loft's breach of

4    contract claim brought pursuant to the LMRA. "The general rule . . . is that punitive damages are

5    not allowed in actions for breach of contract brought under [the LMRA]." *Moore v. Local Union*

6    *569 of Int'l Bhd. of Elec. Workers*, 989 F.2d 1534, 1542 (9th Cir. 1993); *see also Williams v. Pac.*

7    *Maritime Ass'n*, 421 F.2d 1287, 1289 (9th Cir. 1970) ("[W]e think the proposition is established

8    under federal labor law that punitive damages may not be awarded for grievances" brought

9    pursuant to the LMRA). Here, Loft in his breach of contract claim brought pursuant to the LMRA

10   requests "punitive damages." SAC ¶ 29. Loft is precluded from recovering such damages.

11   Accordingly, the Court GRANTS Defendant's motion for summary judgment as to Loft's request

12   for punitive damages in the breach of contract cause of action.

13        The Court now turns to whether Loft may recover emotional distress damages for Loft's

14   breach of contract claim. As a preliminary matter, the Court notes that Defendant, in arguing that

15   "[e]motional distress remedies are . . . not a remedy for 'breach of contract,'" cites no supporting

16   authority. Mot. at 11. Furthermore, although the Ninth Circuit has not explicitly addressed whether

17   a plaintiff may recover emotional distress damages for a breach of contract claim brought pursuant

18   to the LMRA, "in the [N]inth [C]ircuit there is some precedent for awarding damages for mental

19   and emotional distress" for a LMRA claim in general. *Alday v. Raytheon Co.*, 619 F. Supp. 2d

20   726, 732 (D. Ariz. 2008), *aff'd*, 620 F.3d 1219 (9th Cir. 2010).

21        The closest the Ninth Circuit has come to addressing the question of whether emotional

22   distress damages are recoverable for a LMRA breach of contract claim is in *Bloom v. International*

23   *Brotherhood of Teamsters Local 468*, 752 F.2d 1312 (9th Cir. 1984). *Bloom* involved a breach of

24   fair duty of representation claim brought by several union members against their union. *Id*. at

25   1313-14. The union members asserted a claim for emotional distress damages, and the district

26   court awarded each union member $2,500 in damages. *Id*. at 1314. The Ninth Circuit reversed on

27

28

Case No.: 14-CV-00817-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

1    the grounds that "insufficient facts exist to support an award of damages measured by emotional

2    distress." *Id*. at 1313, 1315. The Ninth Circuit found that the individual union members' claims of

3    emotional distress were sparse: one union member provided no proof of emotional distress, one

4    was "disappointed and 'felt screwed,'" one "had 'high hopes' but was 'let down,'" and "one felt

5    'he got treated dirty.'" *Id*. at 1314. The Ninth Circuit also found that there was "insufficient

6    outrageous conduct" on the part of the union "to sustain a direct suit for infliction of emotional

7    distress."[4] *Id*. at 1315. In so holding, the Ninth Circuit did "not reach" the question of whether "the

8    remedy for a breach of the duty of fair representation might appropriately include damages for

9    emotional distress." *Id*. at 1314-15. However, the Ninth Circuit cited and quoted with approval an

10   Eighth Circuit case, in which the Eighth Circuit held that a plaintiff *could* recover damages for the

11   infliction of emotional distress in a LMRA claim for breach of a collective bargaining agreement.

12   *Id.* at 1315 (citing and discussing *Richardson v. Commc'ns Workers of Am.*, 443 F.2d 974, 985

13   (8th Cir. 1971)). The Ninth Circuit described the union's conduct in *Richardson* as justifying

14   emotional distress damages because it was done in a "particularly abusive manner" and involved

15   "a lengthy pattern of malicious treatment." *Id.* (internal quotation marks omitted). Specifically, the

16   plaintiff in *Richardson* endured, *inter alia*, "1,000 '[v]ile and derogatory' signs, constant

17   'chanting, jeering, and gesturing,' a daily 'rain of nuts, bolts, and screws thrown at him,'

18   intentional cigarette burns, vandalism of his car and locker, and vulgarities about his wife." *Id.*

19   (quoting *Richardson*, 443 F.2d at 983 n.12). In such a case, the union's "extreme conduct"

20   justified recovery of emotional distress damages. *See id.* (internal quotation marks omitted).

21           Accordingly, based on *Bloom*, it appears a plaintiff may recover emotional distress

22   damages for a LMRA claim if the plaintiff can point to union conduct that is, for instance,

23   "particularly abusive" and involves "a lengthy pattern of malicious treatment." *Id.* at 1315

24

25   [4] The Ninth Circuit did not detail the union's alleged conduct at issue in *Bloom*. However, the
     gravamen of the dispute was that, during labor negotiations, the union president promised the
26   plaintiffs that the union president would secure a preferential hiring agreement with another
     bargaining unit. *Bloom*, 752 F.2d at 1313. The union failed to secure such an agreement, and the
27   plaintiffs sued for specific performance. *Id*.

28

12

(internal quotation marks omitted). Therefore, Defendant's argument that Loft is legally precluded from recovering emotional distress damages appears to be incorrect. Furthermore, Defendant explicitly stated that it was not challenging the sufficiency of the evidence in the record to support Loft's claim for emotional distress damages.[5] *See* Opp'n at 13 ("Whether or not Plaintiff has sufficiently alleged outrageous conduct is not the direct thrust of this motion for summary judgment."). The only challenge Defendant raised is whether emotional distress damages were foreclosed in a LMRA breach of contract action as a matter of law. As previously discussed, this does not appear to be the case. *See Bloom*, 752 F.2d at 1314-15. Therefore, the Court DENIES Defendant's motion for summary judgment as to the issue of whether Loft may recover emotional distress damages for his breach of contract claim.

## IV. CONCLUSION

For the reasons stated above the Court GRANTS Defendant's motion for summary judgment as to Loft's request for punitive damages for Loft's breach of contract cause of action. The Court otherwise DENIES Defendant's motion.

**IT IS SO ORDERED.**

Dated: March 31, 2015

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

---

[5] Even if Defendant had argued that there was no evidence in the record to support Loft's claim for emotional distress damages, the Court notes that Loft stated in his declaration that he "suffered mental anguish consisting of anxiety related to the possible penalty of expulsion," that Defendant's conduct "upset my familial relations," and that Loft "suffered headaches, occasional nausea[,] depression, anger, and the loss of reputation among my peers." Loft Decl. ¶ 22. Furthermore, during Loft's February 25, 2014 trial, a union official allegedly told Loft that "'if it was up to him,' he would take me 'out to the back alley.'" Loft Decl. ¶ 15; *see also* Baker Decl., Ex. F, at 36:22-23 (deposition testimony of union official who acknowledged that he and Loft "had an exchange of sorts" during the February 25, 2014 trial and that "several people heard the [official's] comment" as he "would take [Loft] out to the back alley.").

Case No.: 14-CV-00817-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT